Nott, J.,
delivered the opinion of the court:
This is an action brought to recover the net proceeds of two hundred and eleven bales of cotton, captured at Wilmington. The proceeds, it is alleged, amount to not.less than $43,000.
After the bringing of this action, one Alexander Oldham instituted another suit to recover the proceeds of seventy bales of the same cotton. When this action came on for trial, the counsel for the claimant expressly renounced all demands as to the seventy bales, and conceded that they were rightfully the property of Oldham. The court, therefore, proceeds as if the petition sought only the proceeds of one hundred and forty-one bales of cotton.
The material facts of the case may be briefly stated as fol- . lows:
I. Louis De Bebían, deceased, was a citizen of France, of advanced age, who resided during the rebellion at Wilmington, North Carolina. He consistently maintained his neutrality as a resident alien, and never gave aid or comfort to the rebellion.
II. During the rebellion Louis De Bebían acquired and owned, and, at the time of the capture of Wilmington, was possessed of, one hundred and forty-one bales of cotton.
*379 III. After the capture of Wilmington, ancl on or about the 1st April, 1805, Louis De Bebian was lost at sea, being a passenger on the steamer General Lyon, which was burnt off Wilmington. He died intestate, and the claimant, on the 23d June, 1866, was appointed his administrator. He left a wife and several children. Those of- the children who had attained their majority resided, during the rebellion, in the city of New York; the others, who remained in Wilmington, were of tender years.
IY. After the capture of Wilmington, and after the death of the decedent, but before the appointment of his administrator, the United States military authorities seized the cotton of which he had been the owner. Of it thirty-two bales were shipped to the quartermaster at New York, and by him turned over to the cotton agent of the Treasury Department. These thirty-two bales were sold in June, 1865, and brought $100 per bale net, and the proceeds now in the treasury amount to $3,200.
The remaining one hundred and nine bales were turned over to the treasury agent at Wilmington. They were not shipped to New York till the 21st July, 1865, and were sold in August, 1865, bringing $125 95 per bale net.. The proceeds now in the treasury amount to $13,633 55.
This case, however, brings for the first time before the court the question as to the amount of proceeds of the Wilmington cotton, and with it much of the confusion, neglect, and anomalies that we have, unhappily, been taught to anticipate.
In reply to the mandate of the court, the Secretary of the Treasury reported, August 8, 1868, that Wilmington cottons realized the average net sum per bale of $133 74 in currency. Unfortunately, we have hitherto found, as in the case of the Atlanta cotton, Lowry’s Case, (4 C. Ols. B., p. 377,) that these general statements and conclusions, relative to the proceeds of cotton, are not to be relied upon; and, that while the claimant whose cotton sold below the general average rests content with the report, the claimant whose cotton sold above the average is very sure to seek for more specific information.
If this were an action upon contract, wherein the judgment would be satisfied by the defendants, we might rest upon their report of their Secretary, especially as their legal representative, the Attorney General, does not question its accuracy or its sufficiency. But the decree in this case will be against a *380 specific fund under a specific trust, and there are third persons, not now before the court, beneficiaries under the trust, and severally interested-in the fund. It is the duty of the court to protect their interests so far as to see that money is not paid away under a decree in this case which ultimately may prove to be theirs. Moreover, there have come down from the Treasury. Department some reports of the Quartermaster General and of certain treasury agents, whereby it appears that the Wilmington cotton came forward by three different vessels, at three distinct times, and brought, as might have been supposed, three different prices. As these different prices can be ascertained, there can be no propriety in the court taking the money of one suitor and paying it to another, and it is clearly our duty to go behind the general average of the Secretary.
The following facts are disclosed by these reports:
The Wilmington cottons arrived in New York, and were sold in March, [or April,] June, and August, 1865, viz:
By the Herschel, three hundred and eighty-three bales, which netted $28,426 65.
By the Baymond, three hundred and fourteen bales, which netted $31,400 62.
By the Euterpe, one hundred and forty-four bales — no specific sale reported.
But, by the report of the Quartermaster General, it appears ' that of the four hundred and fifty-eight bales which arrived by the Baymond and Euterpe, four hundred and thirty-two netted $47,524 05. Subtracting from this number (four hundred and thirty-two) the known number on the Baymond, (three hundred and fourteen,) and from this amount ($47,524 05) the known proceeds of that cargo, ($31,400 62,) we have, as the proceeds of one hundred and twenty-eight bales by the Euterpe, $16,123 33. What became of the remaining sixteen bales by the Euterpe does not appear.
These data enable us to find the proceeds per bale of the several cargoes, viz:
Three hundred and eighty-thfee bales by Herschel,.in March, $28,426 65, being $74 22 per bale.
Three hundred and fourteen bales by Baymond, in June, $31,400 62, being $100 per bale.
One hundred and twenty-eight bales by Euterpe, in August, $16,123 33, being $125 95 per bale.
*381 The anom alies disclosed by this statement are, that the earliest cotton brought the least price, and that the highest rate falls, below the general average of the Secretary. It is probable that some of these sales are stated in coin, and others in currency, but it is hardly possible that the last was the gold price of the cotton.
These conjectures, however, can be confirmed only by a further report. The claimant may recover at the rates indicated, or he may have the case remanded, and take a rule upon the Secretary of the Treasury for a further report.
The judgment of the court is, that the claimant recover the net proceeds of thirty-two bales of cotton, at $100 per bale, and of one hundred and nine bales, at $125 95 per bale, amounting, in the aggregate, to $16,833 55, with leave to the claimant, if he so elect, within twenty days to have the judgment vacated,, and the cause remanded to the docket for further evidence.